**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2534-20

IN THE MATTER OF DENIAL
OF FPIC AND HANDGUN
PURCHASE PERMIT
BY ANDRIY YAREMIY.

_____

Argued March 2, 2022 – Decided March 15, 2022

Before Judges Hoffman, Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-0047-20.

Richard G. Potter argued the cause for appellant Andriy Yaremiy (Galantucci & Patuto, attorneys; Richard G. Potter, on the brief).

Deepa S.Y. Jacobs, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Deepa S.Y. Jacobs, on the brief).

PER CURIAM

Appellant Andriy Yaremiy appeals from a Law Division order denying

his appeal of the denial of a Firearms Purchaser Identification Card (FPIC) and

Handgun Purchase Permit. Having considered the facts and applicable legal principles, we reverse and remand.

We take the following facts from the record. Appellant applied for a FPIC and Handgun Purchase Permit. The application was denied by the Chief of the Borough of Wood-Ridge Police Department. In his letter to appellant notifying him of the denial, the Chief stated that investigation revealed appellant had been arrested for driving while intoxicated (DWI) in 2015. The Chief concluded that the following statutes applied: N.J.S.A. 2C:25-19 (any person who has been convicted of any crime, or a disorderly persons offense involving an act of domestic violence whether or not armed with or possessing a weapon at the time of the offense); N.J.S.A. 24:21-2 (any person who is confined for a mental disorder to a hospital, mental institution or sanitarium, or to a person who is presently a habitual drunkard); and N.J.S.A. 2C:58-3(c)(5) (issuance would not be in the interest of the public health, safety or welfare).

Appellant filed a timely appeal in the Superior Court. The court conducted a two-day hearing. The Chief testified that in 2015, appellant was arrested in New York on a "2C violation," and in 2008, appellant received a summons for an open container violation in Harrison, New Jersey. However, the Chief later corrected himself, acknowledging the 2008 incident involved a summons for consumption of alcohol by a passenger while the vehicle is being

A-2534-20

operated, in violation of N.J.S.A. 39:4-51a(a). Appellant was fined $256 and costs for that violation; his license was not suspended, and he was not sentenced to jail time.

On the 2015 offense, defendant pled guilty to a reduced charge of driving while ability impaired (DWAI), in violation of New York Vehicle and Traffic Law (VTL) § 1192.1, and was sentenced to a one-year conditional discharge, no jail time, a ninety-day suspension of driving privileges, and a $500 fine.

The Chief testified that he denied the application because of appellant's history of alcohol, "falsification on the application," and "it not being in the best interest" of the public safety, health, and welfare of our citizens. The Chief related that he had never granted a firearm purchase application to someone with a DWI conviction.

Detective David Marchitelli testified that he believed appellant's prior involvement with alcohol and motor vehicles showed a lack of judgment and disregard for the law. Marchitelli was also concerned that appellant was not truthful when questioned about the 2015 DWI arrest. He concluded the application should be denied based on a risk to public health, safety, and welfare.

3

The State presented no evidence that appellant was a habitual drunkard, suffered from mental health conditions, had been confined for a mental disorder to a hospital or psychiatric treatment facility, or had any history of committing domestic violence. The Chief confirmed that no domestic violence complaints or drunk and disorderly complaints had ever been filed against appellant. He also acknowledged that other than the DWI arrest, he did not know appellant to be a habitual drunkard and was not aware if appellant had any psychological problems.

The State alleged appellant omitted pertinent information from his application regarding the alleged criminal violation. The application asked appellant if he had ever been convicted of a crime in New Jersey or of any criminal offense in any other jurisdiction where he could be sentenced to more than six months in jail. Appellant did not report his DWI conviction or open container violation on his application. The State argued that appellant was barred by N.J.S.A. 2C:58-3(c)(3) from obtaining a FPIC and handgun purchase permit because he falsified his application by omitting the DWI conviction. The State contended that the New York DWI conviction was a criminal offense. However, the Certificate of Disposition issued by Criminal Court of the City of New York, County of Richmond states that appellant pled guilty to violating VTL § 1192.1, which is a motor vehicle violation, not a crime, under

New York law. Therefore, the court found appellant answered the question truthfully.

Appellant contended he had never been convicted of a crime in New Jersey or any other jurisdiction. He asserted his DWI offense was a motor vehicle violation, as was his consumption of alcoholic beverage in a motor vehicle violation. The State did not introduce evidence proving otherwise.

Appellant testified that he is thirty-eight years old, has been married for eleven years, has three children, and owns a business. He was born in Ukraine and is an American citizen. He has never been treated by a psychologist or psychiatrist and has never been hospitalized for a psychiatric problem. Regarding the 2008 consuming an alcoholic beverage in a vehicle charge, appellant testified he pled guilty without the advice of counsel. He claimed he was a passenger in a van driven by a friend and was unaware there was an open container in the vehicle.

The court issued an order and accompanying written decision denying the appeal. Despite the uncontroverted evidence introduced at the hearing and the court's conclusion that appellant answered the question regarding criminal convictions truthfully, the court found appellant's "connection with the truth" was "tenuous." The court found the evidence showed appellant had consumed alcohol in a motor vehicle and pled guilty. The court concluded that appellant

minimized the "significance of the arrest and consequences" to the police and during the hearing.

Although the court found the DWI conviction was not a per se disqualification, nor was his "less-than-truthful response to the detective's questioning," the court determined that appellant's lack of "insight into the gravity of his past involvement with alcohol within motor vehicles" justified the denial of the application.

The court found the Chief and Detective Marchitelli had "excellent recall" and their testimony was "consistent and highly credible." The court found appellant's "testimony was less credible. His testimony conflicted with Marchitelli's testimony." The court opined that appellant

> seemed oblivious to the gravity of his prior conduct. When questioned about follow-up treatment after his arrest for driving while impaired, the perfunctory nature of his response was particularly troubling. He provided little detail about the program that he attended and offered no evidence that he learned anything from the experience.

The court noted, however:

> When questioned about any subsequent treatment, he responded that he was, "advised by the court to attend, I forgot what it was called, I had to be present for an entire day and I listened to the presentation by a mother and a father who had their daughter killed by a drunk person and so they had this big presentation about that and there [were] a lot of people in the room

6

and, you know, that was the only thing that I was required to do . . . ."

The court made the following findings. Appellant "has no prior involvement with the criminal justice system, no history of any involvement in domestic violence matters, and no mental health issues." When interviewed by Marchitelli, appellant acknowledged he was arrested in 2015, "but denied he was ever charged and reported he was found not guilty." The police report indicated that a preliminary alcohol breath test measured a 0.158 Blood Alcohol Content (BAC), and appellant was arrested for DWI under New York statute VTL § 1192.1. Appellant pled guilty and was fined $500, and his driving privileges were suspended for ninety days. He completed a conditional discharge.

The court noted that because a conviction of driving while impaired under New York statute VTL § 1192.1 only exposes the defendant to up to fifteen days in jail and a fine of $300 to $500, appellant "has never been convicted of a crime and his response on the application was truthful."

The court found that "[t]he public health, safety, or welfare disqualifier is intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of a permit or identification card would nonetheless be contrary to the public interest." The court considered appellant's alcohol use even though it did "not rise to

7

alcoholism or habitual drunkenness." The court likewise considered appellant's motor vehicle convictions even though those offenses were not "listed in N.J.S.A. 2C:58-3(c)."

The court found the State met its burden of showing "[b]y a preponderance of the evidence, [that] the issuance of [a] FPIC or Handgun Purchase Permit to appellant would pose a threat to the public health, safety, and welfare." The court concluded appellant "lacks insight into the gravity of his past involvement with alcohol within motor vehicles" and "appeared to have not gained any benefit from the program he was required to attend after his conviction." While recognizing that "the right to bear arms is guaranteed in the [United States] Constitution," the court found good cause to deny appellant's application.

This appeal followed. Appellant argues:

> UPHOLDING THE DENIAL OF THE APPLICATION FOR A FIREARMS PURCHASE IDENTIFICATION CARD AND/OR HANDGUN PURCHASE PERMIT WAS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.

A judicial determination that a defendant poses a threat to the public health, safety, and welfare is a fact-sensitive analysis. In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 505 (2016) (citing State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)).

8 <span>A-2534-20</span>

Therefore, "an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence." Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)). "Therefore, 'we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 506 (quoting Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)); see also J.W.D., 149 N.J. at 117 (explaining that this is especially true when "the evidence is largely testimonial and involves questions of credibility."). However, questions of law are reviewed by the appellate division de novo. In re F.M., 225 N.J. at 506.

Although the right to bear arms is guaranteed by the Second Amendment of the U.S. Constitution, a state's police power allows it to place "reasonable limitations" on firearms ownership. Ibid. (quoting D.C. v. Heller, 554 U.S. 570, 626 (2008)). As a result, our legislature requires a person seeking to own firearms to apply for an identification card and permit. Id. at 507.

Balancing those competing interests—the right to bear arms and reasonable limitations on gun ownership to protect the public—N.J.S.A. 2C:58-3(c) provides:

> No person of good character and good repute in the community in which he lives, and who is not subject

9

to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth.

The statute was enacted to prevent "statutorily 'unfit' persons from possessing firearms." Cordoma, 372 N.J. Super. at 538. Relevant to this case, the disabilities preventing firearm ownership include "any person who has been convicted of any crime or a disorderly persons offense involving an act of domestic violence[,]" N.J.S.A. 2C:58-3(c)(1); "any drug-dependent person" and "any person who is confined for a mental disorder to a hospital [or] mental institution" or "any person who is presently an habitual drunkard[,]" N.J.S.A. 2C:58-3(c)(2); "any person who knowingly falsifies any information on an application form for a handgun purchase permit or firearms purchaser identification card[,]" N.J.S.A. 2C:58(c)(3); and "any person where the issuance [of the permit] would not be in the interest of the public health, safety or welfare[,]" N.J.S.A. 2C:58(c)(5). Any one of these disabilities is legally sufficient to deny the issuance of a permit to own or possess a firearm. Cordoma, 372 N.J. Super. at 534.

The initial determination to grant or deny a FPIC or permit to purchase a handgun is made by the chief of police of the municipality where the applicant resides. N.J.S.A. 2C:58-3(d). The police chief must grant a FPIC and permit "unless good cause for the denial thereof appears[.]" N.J.S.A. 2C:58-3(f). A

denied applicant may request a hearing in the Law Division. In re F.M., 225 N.J. at 508 (citing N.J.S.A. 2C:58-3(d); N.J.A.C. 13:54-1.12(a)). The Law Division court conducts a de novo hearing to review the facts and independently determine whether the applicant is entitled to a FPIC or handgun purchase permit. In re Z.L., 440 N.J. Super. 351, 357 (App. Div. 2015). At the hearing, "the police chief has the burden of proving an applicant is not qualified to receive a handgun permit." Ibid. (citing In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003)). The police chief must prove the disqualification by a preponderance of the evidence. Id. at 358 (citing Osworth, 365 N.J. Super. at 77).

N.J.S.A. 2C:58-3(c)(5) governs "cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." Id. at 356 (quoting Osworth, 365 N.J. Super. at 79). The court may consider the underlying facts even if a criminal charge is dismissed. Osworth, 365 N.J. Super. at 78 (citing J.W.D., 149 N.J. at 110).

In State v. Freysinger, a defendant had to forfeit his firearms and was found to be a "habitual drunkard" because he had two DWI convictions, two convictions for refusing to submit to chemical tests, and admitted that he hit a pedestrian (whom he claimed did not know was his girlfriend) with his car but

did not stop and drove straight home and went to bed. 311 N.J. Super. 509, 516-17 (1998). In contrast, appellant had one DWI conviction in 2015, and a consumption of alcohol in a motor vehicle conviction in 2008, twelve years before he applied for the FPIC and handgun purchase permit.

As the Law Division judge found, appellant did not falsify his application. Appellant is not disqualified by any of the disabilities set forth in subsections (1), (2), (3), (6) or (8) of N.J.S.A. 2C:58-3. Only subsection (5) is at issue. The State was required to prove by a preponderance of the evidence that granting a FPIC or handgun purchase permit to appellant "would not be in the interest of the public health, safety or welfare[.]" N.J.S.A. 2C:58-3(c)(5). Our careful review of the record convinces us that the State did not satisfy that burden.

The consumption of alcohol in a motor vehicle incident as a passenger occurred twelve years before the application was filed. Alcohol consumption by a passenger does not pose a risk to public health, safety, or welfare. The DWI occurred five years before the application. There have been no repeat offenses. Neither conviction was related to weapons or domestic violence. Both were motor vehicle offenses. Appellant is thirty-eight years old. He has never been convicted of a crime or disorderly persons offense, let alone one

12

related to domestic violence. Nor is there any evidence that defendant currently abuses alcohol.

Any misinformation relayed to Detective Marchitelli may well have been caused by the technical aspects of the New York DWI statute and the fact that neither the New York charge that he pled guilty to, nor the New Jersey offense involved crimes or disorderly persons offenses. The confusion of the Chief that the New York offense was a 2C violation appears to have resulted from appellant originally being charged with DWI, in violation of VTL § 1192.2, but pleading guilty to the reduced charge of DWAI, in violation of VTL § 1192.1.

DWI is a misdemeanor under New York law that is punishable by a jail term of up to one year and probation for up to three years, a fine of up to $2500, and a license suspension of up to one year. Penalties for Alcohol or Drug-related Violations, N.Y. DEP'T OF MOTOR VEHICLES.[1] It is a per se offense that involves driving with a BAC of 0.08 or higher. Ibid. In contrast, DWAI by alcohol is a "violation," not a felony or misdemeanor under New York law, and for a first offense is punishable by a jail term of up to fifteen days, a fine up to $500, and a license suspension of up to ninety days. Ibid. It

---

[1]  https://dmv.ny.gov/tickets/penalties-alcohol-or-drug-related-violations (last visited Mar. 7, 2022).

13

involves driving with a BAC more than 0.05 but less than 0.07. Ibid. While perhaps confusing to the Chief, Detective Machitelli, and appellant, the offenses and their respective sentencing ranges are clearly different. And while DWI is punishable in New York by up to one year in jail, by being labelled a misdemeanor, it is hardly surprising that appellant, who lives in New Jersey and is not an attorney, would not know that it technically falls within the definition of a crime under N.J.S.A. 2C:1-4(a) because it is punishable by imprisonment in excess of six months.

Moreover, even if a misdemeanor under New York law largely equates to a disorderly persons offense under New Jersey law, disorderly persons offenses are not crimes under our Criminal Code. N.J.S.A. 2C:1-4(b). Therefore, by answering that he had never been convicted of a crime or disorderly persons offense in New Jersey or a criminal offense in another jurisdiction where he could have been sentenced to six or more months in jail, appellant was neither untruthful nor misleading.

Reversed and remanded for the Law Division to enter an order granting a FPIC and handgun purchase permit to appellant. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2534-20